**Reversed and Rendered and Memorandum Opinion filed May 27, 2021.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-19-00095-CV

### SAN JACINTO RIVER AUTHORITY, Appellant

### V.

### ANDY RAY, ET AL., Appellees[1]

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2017-74372**

## M E M O R A N D U M   O P I N I O N

Appellant San Jacinto River Authority ("SJRA") appeals the denial of its plea to the jurisdiction in this property takings case. Plaintiffs/appellees alleged that water SJRA released from Lake Conroe after Hurricane Harvey made landfall flooded and damaged their properties. SJRA contends the district court erred in denying its plea and refusing to dismiss appellees' constitutional inverse

---

[1] See attached Appendix A for a list of all appellees.

condemnation claims because civil district courts lack jurisdiction over such claims in Harris County. We agree, and we held last year that, under Government Code section 25.1032(c), county civil courts at law in Harris County have exclusive jurisdiction over constitutional inverse condemnation claims. *San Jacinto River Auth. v. Ogletree*, 594 S.W.3d 833, 839-40 (Tex. App.—Houston [14th Dist.] 2020, no pet).

The parties dispute, however, whether appellees have also alleged statutory takings claims under Government Code chapter 2007 and whether appellees have sufficiently pleaded a waiver of SJRA's immunity from suit for statutory takings claims. We agree with SJRA that appellees did not plead a statutory takings claim. Therefore, we do not address whether SJRA's immunity is waived under that chapter.

We reverse the district court's order denying SJRA's plea to the jurisdiction and render judgment dismissing appellees' claims for lack of subject matter jurisdiction.

## Background

In their live petition, appellees alleged that just after Hurricane Harvey made landfall in Southeast Texas, SJRA released water from its Lake Conroe reservoir into the San Jacinto River. SJRA made this decision, appellees asserted, substantially certain that its actions would flood thousands of homes and businesses downstream along the San Jacinto River and Lake Houston. Contending that the release of water from Lake Conroe flooded and permanently damaged their business and residential properties, appellees—nearly 300 downstream property and business owners—sued SJRA in Harris County district court. In their live pleading, appellees asserted inverse condemnation claims under Article I, Section 17 of the Texas Constitution. Whether their pleading alleged *only* constitutional inverse

2

condemnation claims is disputed, and we discuss that issue below.

SJRA filed a plea to the jurisdiction, urging that the district court lacked subject matter jurisdiction for two reasons: (1) under Government Code section 25.1032, county civil courts at law have exclusive jurisdiction over constitutional inverse condemnation claims filed in Harris County; and (2) appellees failed to plead sufficient facts demonstrating a waiver of governmental immunity.

In response, appellees asserted, among other things, that under fair notice pleading standards, the court should construe their petition as alleging, in addition to constitutional inverse condemnation claims, statutory takings claims under Government Code chapter 2007. Appellees also contended that they demonstrated the trial court's jurisdiction by properly pleading the necessary elements of a statutory takings claim. In reply, SJRA denied that appellees pleaded statutory takings claims under chapter 2007. Alternatively, and assuming appellees had pleaded chapter 2007 takings claims, SJRA asserted that only the first plaintiff, Andy Ray, filed his suit before the 180-day deadline for such claims,[2] and the remaining appellees' claims were time-barred.

The trial court denied SJRA's jurisdictional plea, and this appeal followed.

### Standard of Review

Subject matter jurisdiction is necessary to a court's authority to decide a case. *City of Houston v Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam). A plea to the jurisdiction seeks to dismiss a case for want of subject matter jurisdiction. *City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2010). Because subject matter jurisdiction is a question of law, we review the court's ruling de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *City of Brazoria*

---

[2] *See* Tex. Gov't Code § 2007.021(b).

3

*v. Ellis*, No. 14-14-00322-CV, 2015 WL 3424732, at *3 (Tex. App.—Houston [14th Dist.] May 28, 2015, no pet.) (mem. op.). In deciding a jurisdictional plea, the trial court may not weigh the merits of the plaintiff's claims but must consider only the pleading and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

When, as is relevant here, a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged acts that affirmatively demonstrate the court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 227. If the pleadings are insufficient to establish jurisdiction but do not affirmatively establish an incurable defect, the plaintiff should be afforded an opportunity to replead. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007); *Miranda*, 133 S.W.3d at 226-27. But if the pleadings affirmatively negate the trial court's jurisdiction, the case may be dismissed without allowing the plaintiff an opportunity to amend. *Miranda*, 133 S.W.3d at 227; *Ogletree*, 594 S.W.3d at 839-40.

## Analysis

### A. Harris County district courts lack subject matter jurisdiction over constitutional inverse condemnation claims.

Texas Government Code section 25.1032 governs jurisdiction over eminent domain proceedings brought in Harris County:

> A county civil court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory and inverse, if the amount in controversy in a statutory proceeding does not exceed [$250,000] . . . . The amount in controversy is the amount of the bona fide offer made by the entity with eminent domain authority to acquire the property from the property owner voluntarily.

Tex. Gov't Code § 25.1032(c). This court has held that county civil courts at law have exclusive jurisdiction over constitutional inverse condemnation claims in

Harris County. *Ogletree*, 594 S.W.3d at 839-40. The First Court of Appeals is in accord. *See San Jacinto River Auth. v. Burney*, 57 S.W.3d 820, 825-29 (Tex. App.—Houston [1st Dist.] 2018), *aff'd on other grounds*, *San Jacinto River Auth. v. Medina*, Nos. 19-0400, 19-0401, 19-0402, —S.W.3d—, 2021 WL 1432227, at *1 (Tex. Apr. 16, 2021).

In *Ogletree*, numerous property owners downstream from Lake Conroe alleged that SJRA, by releasing water from Lake Conroe in the immediate aftermath of Hurricane Harvey, "intentionally caused the flooding of their properties to protect the integrity of the [Lake Conroe] dam as well as other properties." *Ogletree*, 594 S.W.3d at 837. As relevant here, the *Ogletree* claimants asserted constitutional inverse condemnation claims against SJRA in a Harris County district court. *Id.* SJRA filed a plea to the jurisdiction, which the trial court denied. *Id.* In SJRA's interlocutory appeal, we held that, pursuant to Texas Government Code section 25.1032(c), Harris County civil courts at law have exclusive jurisdiction over the property owners' constitutional inverse condemnation claims; consequently, the district court lacked subject matter jurisdiction over these claims. *Id.* at 839-40. We reversed the district court's denial of SJRA's jurisdictional plea and rendered judgment dismissing the property owners' claims for lack of subject matter jurisdiction. *See id.* at 843.

*Ogletree* controls the disposition of this case. Because the district court lacked subject matter jurisdiction over appellees' constitutional inverse condemnation claims, the trial court erred by denying SJRA's plea to the jurisdiction. We next turn to whether appellees pleaded alternative statutory takings claims over which the district court had jurisdiction.

**B.    Appellees did not plead a statutory takings claim.**

Appellees contend that, regardless whether the trial court had jurisdiction over

their constitutional inverse condemnation claims, the trial court did not err in denying SJRA's jurisdictional plea because appellees alleged alternative claims for a statutory taking, and district courts possess jurisdiction over such claims.

Chapter 2007 provides that private property owners may bring suit to determine whether governmental action results in a "taking under this chapter." Tex. Gov't Code § 2007.021(1). The Supreme Court of Texas recently determined that chapter 2007 "authorizes a statutory takings suit for governmental actions that constitute takings under the state or federal constitution (either physical or regulatory) or that cause a reduction of at least 25 percent in market value." *Medina*, 2021 WL 1432227, at \*4. Although chapter 2007 does not obligate a governmental entity to pay damages, property owners may sue to adjudicate whether governmental actions result in a taking under the chapter; if successful, they are entitled to invalidation of the governmental action resulting in the taking, a judgment including a fact finding determining the monetary damages suffered as a result of the taking, and an award of attorney's fees and costs. *See id.* at \*5 (citing Tex. Gov't Code §§ 2007.006(a), 2007.021, 2007.023(b) 2007.024(b), 2007.026(a)). A claim under chapter 2007 must be brought in district court. *See* Tex. Gov't Code § 2007.021(a); *see also Burney*, 570 S.W.3d at 829.

Appellees contend that, because the facts supporting their constitutional takings claims are the same as those that would support chapter 2007 statutory takings claims, their pleadings provide fair notice of both types of claims. We disagree.

Pleadings must give reasonable notice of the claims asserted. *City of Dickinson v. Stefan*, 611 S.W.3d 654, 661 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *see also* Tex. R. Civ. P. 47 (requiring that an original pleading setting forth a claim for relief must contain "a short statement of the cause of action sufficient to

6

give fair notice of the claim involved"). SJRA did not specially except to appellees' live petition, so we must liberally construe their allegations to include any claims that reasonably may be inferred from the specific language as used, even if an element of a claim is not specifically alleged. *Stefan*, 611 S.W.3d at 662. But "we cannot use a liberal construction of a petition as a license to read into the petition a claim that it does not contain." *Id.*

Here, appellees' live pleading—their first amended petition—asserts a single cause of action for "inverse condemnation without just compensation in violation of the Texas Constitution." We reproduce here the full text of appellees' allegations under the inverse condemnation claim:

> Defendant's act of releasing water from Lake Conroe during Hurricane Harvey constitutes an intentional taking, damaging, and/or destruction of Plaintiffs' properties, in violation of Article I, § 17 of the Texas Constitution (the "Texas Takings Clause"), in that Defendant knew, or at a minimum, was substantially certain that releasing water from Lake Conroe would cause the flooding of Plaintiffs' properties as described above.
>
> At the time of Defendants taking, Plaintiffs had a private vested interest in their properties. Plaintiffs' distinct, reasonable and investment-backed expectations were that they would have the beneficial use of the land, improvements, personal property, and all other associated property rights consistent with their properties' then-existing character and customary use. Plaintiffs also had distinct, reasonable, and investment-backed expectations that their properties would not be subject to the intentional, knowing, affirmative and conscious flooding described herein.
>
> Defendant intentionally performed certain acts and/or intentionally failed to perform necessary acts in the exercise of its statutory and constitutional eminent-domain authority, including but not limited to, operating the Lake Conroe Reservoir and Dam in a manner that guaranteed the flooding of Plaintiffs' properties. Defendant's intentional acts were the proximate cause of a physical taking, damaging, and/or destruction of Plaintiffs' properties. This taking was

done for public use because, according to Defendant, its intentional, knowing, affirmative and conscious acts, decisions and conduct (1) protected the stability and integrity of the Lake Conroe Dam, its earthen embankment and other infrastructure; (2) ensured that Lake Conroe would continue to be available for use as a reservoir for critical freshwater storage and for recreational activities and sporting uses like boating and fishing once the storm and its effects had passed; (3) protected and spared homes and other properties on Lake Conroe and upstream from the flooding; (4) minimized the danger to the public by keeping docks, bulkheads, small islands and other structures unsubmerged for as long as possible so that they would be visible to boaters; (5) minimized the danger to the public associated with electrical outlets and equipment coming into contact with water; and (6) enabled the lake, adjacent parks and adjacent roads to reopen and become fully operational as quickly as possible for the public's benefit.

Plaintiffs did not consent to the flooding of their properties, which would not have otherwise flooded but for Defendant's intentional, knowing, affirmative and conscious decision to release water from Lake Conroe between late August 2017 and early September 2017. Furthermore, Plaintiffs have not received compensation for the temporary and permanent taking of their homes and businesses and other private properties by Defendant.

The inundation, flooding, destruction of, substantial damage to and/or devaluation of Plaintiffs' homes, businesses and other properties were the natural, direct and probable consequence of Defendant's authorized actions described herein.

Article I, Section 17 of the Texas Constitution states "no person's property shall be taken, damaged or destroyed or applied to public use without adequate compensation being made." Tex. Const. art. 1, § 17. The Supreme Court of Texas opined that there is a clear and unambiguous waiver of immunity from suit for inverse-condemnation claims within the ambit of Article I, § 17 of the Texas Constitution. Tex. Const. art. 1, § 17. *Harris County Flood Control District v. Kerr*, 499 S.W.3d 793, 799 (Tex. 2016); *Kirby Lake Dev. v. Clear Lake City Water*, 321 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2008), *aff'd*, 320 S.W.3d 829 (Tex. 2010). Therefore, sovereign immunity and governmental immunity do not shield Defendant from liability for compensation under the Takings Clause. *Id.*

8

The above language asserts only constitutional inverse condemnation claims. Next in their petition, appellees immediately moved to damages, asserting greater than $1,000,000 in monetary relief proximately resulting from SJRA's "unconstitutional taking."

Appellees' petition contains no cite or reference to chapter 2007 or any of its sections. Nor does it contain any allegations the SJRA's immunity is waived under chapter 2007. "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *cf. also Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012) ("In the absence of a properly pled takings claim, the state retains immunity."). Here, appellees pleaded only "that there is a clear and unambiguous waiver of immunity for inverse-condemnation claims within the ambit of Article 1, § 17 of the Texas Constitution"; they did not assert that SJRA's immunity from suit was waived under chapter 2007 or any other statute. *See* Tex. Gov't Code § 2007.004(a) (providing that "immunity to suit and liability is waived and abolished to the extent of liability created by this chapter"). Even construed liberally, nothing in appellees' pleading suggests that they sought relief under chapter 2007.

Thus, we conclude that appellees did not plead a chapter 2007 statutory takings claim; any other conclusion would require us to read into appellees' petition a claim that it does not assert. *See Stefan*, 611 S.W.3d at 662. Instead, the only pleaded cause of action is one for inverse condemnation under Article I, Section 17, of the Texas Constitution. *Cf. id.* (explaining that, although the appellee sought declaratory relief, he did not invoke declaratory relief under Tex. Loc. Gov't Code chapter 245 or point to it as a basis for his relief; "Stefan's pleading, liberally construed, contains no chapter 245 claim for declaratory relief").

9

**C.** **Appellees' live petition affirmatively negates the district court's jurisdiction.**

Appellees assert entitlement to amend their petition in response to SJRA's plea to the jurisdiction because they can easily cure the pleading deficiencies. We disagree that an opportunity to amend is available here.

When the jurisdictional issue is one of pleading sufficiency, appellate courts generally must remand a case to afford parties an opportunity to cure jurisdictional defects in their pleadings when the parties did not have a full and fair opportunity to do so in the trial court. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96-97 (Tex. 2012); *Miranda*, 133 S.W.3d at 226-27. If pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226-27. An opportunity to amend is not warranted, however, if (1) the pleadings or record conclusively negate the existence of jurisdiction, (2) the plaintiff failed to show jurisdiction despite having had full and fair opportunity in the trial court to develop the record and amend the pleadings, or (3) if such opportunity was not given, the plaintiff would be unable to show the existence of jurisdiction if the cause were remanded to the trial court and such opportunity afforded. *Rusk State Hosp.*, 392 S.W.3d at 96. A claimant may have lacked a fair opportunity to amend in the trial court if, for example, the jurisdictional issue arose for the first time on appeal. *See Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2019) (citing *Rusk State Hosp.*, 392 S.W.3d at 96-97; *Miranda*, 133 S.W.3d at 231).

Here, SJRA's exclusive jurisdiction argument pertaining to appellees' constitutional inverse condemnation claims did not arise for the first time on appeal, and appellees had a fair opportunity to amend in the trial court. Appellees raised the

chapter 2007 issue in response to SJRA's plea by arguing that their pleading asserted statutory condemnation claims. SJRA replied to appellees' contention. SJRA filed its plea in September 2018, and appellees filed their response in January 2019. During that period, according to our record, appellees did not seek to amend their petition but rather asserted in the response that their existing petition sufficiently alleged statutory takings claims under chapter 2007. We have concluded otherwise. Appellees had the opportunity to amend their pleadings in the trial court after SJRA filed its plea to the jurisdiction. *See id.* at 559; *Miranda*, 133 S.W.3d at 231 (observing that parties had an opportunity to amend their pleadings and did so and were not entitled to another opportunity to replead). Rather than filing a further amended petition, appellee stood on their existing pleading.

Moreover, the right to amend does not arise if the live pleading affirmatively negates jurisdiction based on the claims pleaded. *See Clint Indep. Sch. Dist.*, 487 S.W.3d at 559. Appellees' live pleading affirmatively negates the district court's jurisdiction because the only pleaded takings claim is under the Texas Constitution, and county civil courts at law have exclusive jurisdiction over those claims in Harris County. Thus, "the proper remedy is to reverse the order denying SJRA's plea and render judgment dismissing [appellees]' claims for lack of subject matter jurisdiction." *Ogletree*, 594 S.W.3d at 842. This is so because "[g]enerally, the right to replead 'arises when the pleadings fail to allege enough jurisdictional facts to demonstrate the trial court's jurisdiction'; it is not a 'mechanism . . . for parties, over whose claims the trial court does not have jurisdiction, to plead new claims over which the trial court does have jurisdiction.'" *Id.* at 843 (quoting *Clint Indep. Sch. Dist.*, 487 S.W.3d at 559). Appellees cite no authority suggesting that remand to permit them to add unpleaded statutory takings claims is the proper remedy under these circumstances. *Cf. id.*

As it was in *Ogletree*, our disposition here is without prejudice to appellees' rights, if any, to file or refile claims in the proper court, and we express no opinion as to the availability or viability of any future claims.

## Conclusion

Because the district court lacked subject matter jurisdiction over appellees' constitutional inverse condemnation claims, and because appellees did not plead a statutory takings claim under Government Code chapter 2007, the trial court erred in denying SJRA's plea to the jurisdiction. Accordingly, we reverse the trial court's order denying SJRA's plea to the jurisdiction and render judgment dismissing appellees' claims for lack of subject matter jurisdiction.

/s/ Kevin Jewell
   Justice

Panel consists of Justices Jewell, Bourliot, and Wilson.

**Appendix A: Full List of Appellees in Cause No. 14-19-00095-CV**

Andy Ray, Jeff Adams, Brad Adcock, Paul Aegerter, Tim Ames, Gerald Andrews, Fanny Arias, Raul Arias, David Atteberry, Mary Aurilio, Susan Await, Larry Bates, Walter Bennett, Lori Berry, Mark Blaylock, Rhonda Bloomer, Eric Boer, Joy Bohlke, Bridget Boudreaux, Karen Boughton, Lauren Boyd, Belinda Boyd-Miller, Luther Brenek, Alvin Brewer, Jesus Brito, Kristi Brown, Katherine Burress, Christopher Bush, Tom Butler, Antulio Cardenas, John Carlisle, John Carter, William Carter, Dougan Caruthers, Yvonne Catala, Jo Lane Chamberlain, Don Chesnut, Elizabeth Cipriani, Richard Clayden, Carol Clayton, Peter Coulter, Patricia Cugini, Patrick Cunningham, Randy Davis, Robert Dawkins, Eduardo Del Pino, Eddie Delaney, Leroy Delk, Maria Denari, Albert Dennler, Ermi Diaz, Jacqueline Dickakian, Marla Dietz, Greg Dillard, William Dismukes, Gerard Doyle, Kenneth Dugas, Marilynn Dulany, Edward Dumire, Annemarie Dworak, Beverly Dyer, Janine Eggers, Georgena Ellison, Michelle Ely, John Farmer, Tyrone Faust, Diana Fearon, Robert Fennell, Danell Fields, Leslie Flake, Courtney Fontenot, Tyler Ford, Gayles Forward-Perkins, Jimmy Foster, Laura Foster, Rick Fox, Andrew Francis, Rick Frazier, Michael Gibson, Frank Girolamo, Edwin Goldman, Jason Gomez, Juan Gonzalez, Debbie Grant, Mary Grant, Rhonda Haney, Amanda Hanna, Jackie Harmon, Mark Hatch, Tara Heil, Mary Helmer, Jeff Hemmer, Robert Hendry, Gaye Henley, James Henry, Charles Hensley, William Hepfner, Jason Hillyer, Virginia Hogwood, Kimberly Holland, Kenneth Howard, David Huether, James Jenkins, John Jenkins, Walter Jenkins, Joanne Jester, Yu Jin, Chris Johnsen, Glenda Johnson, Marco Johnson, Stanley Jorgensen, Kelly King, Robert King, Sherry Kitts, Ellen Klager, John Klug, David Kniess, Steven Knowles, William Koerner, Gerald Konieczny, Samir Kreit, Eric Kristiansen, Christina Kruse, Janice Laney, Ronald Leggett, Frank Leidolf, Diane Lemma, Loretta Lemoine, Frederick Lengefeld, Mary Limbaugh, Carlyn Llenos, Sharon Llewellyn, Gregory Lucas, Lason Mackey-Hines, Christopher Madden, Manuel Malvaez, David Mantey, Molly Marchman, Linda Martin, Joseph Maul, Dick McCall, Hollie McClellan, Walter McFerrin, Daniel McGinnis, Robert McHugh, Jr., Eric McKee, Erin McLea, Paula McLean, Donna McMurray, Christi Medlock, John Mikan, James Miller, Daniel Millman, Nicolae Mititeanu, Monte Mittag, Carl Montano, Ronnie Moore, Connie Moreno, Paul Morgan, Loretta Mormino, Joe Morris, Chad Moses, Sasha Mote, John Moyell, Betty Murphy, Kevin Murphy, Robin Naber, Thomas Nelson, II, Sam Nielsen, Jeanie Nolle, Jerry Noon, Carlos Ochoa, Luis Ochoa, Paula Ortiz, Britt Owens, Darrell Owens, Robert Panzarella, Stacia Parmenter, Eduardo Parra, David Parrott, Scott Pelfrey, Sharon Phillips, Jim Pinkerton, Ricardo Pinon, Peggy Pipkin, Kori Plowman, Christopher Priddy, Keith Probyn, Carol Pursley, George Quenzer, Todd Rainer, Andrew Raymer, Jamie Reneau, Mario Reyes, George Rittenhouse, Justin

Robert, Charlotte Roberts, Jeff Roberts, John Rocco, David Roesler, Patrick Rollins, Douglas Round, Sharon Rounsaville, Charles Rudd, Paul Rudman, Anthony Ruffino, Scott Sabrsula, John Sam, Wendy Santos, Andrea Schlecht, Allen Schmit, Loren Scholtes, Michelle Scott, Patrick Shanahan, Raman Shanker, Dianna Simmons, Jeff Simmons, Michael Sladek, Sylvia Slaughter, Simon Smetherman, Gary Smith, James Smith, William Smith, Brandon Stanislaus, Robert Stark, Gary Steinberger, Brenda Stephens, Ross Stephenson, Richard Stewart, Holger Stibbe, Bob Stippel, Ronnie Stokley, Jennifer Stone, John Stone, Barry Stringer, Jason Stults, Melissa Sturgis, James Suggs, Erick Sujo, Todd Svihovec, Angela Swanagon, Sandra Swanson, Bibianna Szopa, Troy Thornton, Pete Torres, Raul Torres, Andre Tran, Miguel Turn, Fernando Turrubiartes, Robert Tyler, Colleen Ulrich, Mary Underwood, Isak van der Walt, Bill Vaughn, Dustin Veatch, Dawn Villaneuva, Sandra Vivell, Chelsea Walls, Charley Ward, Lawrence Wedekind, Mary Westhoff, Terry Whitney, William Wilkerson, Chad Williams, Julie Williams, Nicholas Wilson, Jim Wise, Charlotte Wisenbaker, Terry Woodall, Crystal Worley, Rhonda Wright, Gary Zelasko, Zhiyong Zhao, Marlene Zuckerman, Kingwood Bagel & Sandwich Company, Gnome Sweet Gnome LLC, Woody T. Barksdale DDS, Jerry W. Bautsch DDS PA, Pat Cunningham State Farm Insurance Agency, Ian Healy, DDS, MDS, PLLC, Rachael's Gifts Northeast, LLC, Chiron Communication Services, LLC, Creekwood Dental, Inc., Kingwood Urgent Care Clinic, LLC, A&X Zhai, LLC, Drei B LLC, Memorial Hermann Medical Group, Allergy & ENT Associates, PA, Hatem Khalaf d/b/a Kingwood Photo Lab, Francy Le and Andre Tran d/b/a S&A Nails, Tram Le d/b/a Pholicious Vietnamese Rice Noodles, Gregory Constantinou d/b/a Le Tique Nails, VSR Holdings LLC, SIR Enterprises, Inc. d/b/a Roberts Carpet & Fine Flooring, and Salim Hussain